UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN SUMMERSET and SARA TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:25-cv-11121-PBS<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Karen Summerset and Sara Taylor ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this putative class action against Defendant Liberty Mutual Insurance Company ("Defendant") and, based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts and experiences, and upon information and belief, supported by the investigation of counsel, as to all other matters, alleges as follows:

**NATURE OF THE ACTION**

1. This putative class action arises out of Defendant's systematic and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and its implementing regulations adopted by the Federal Communications Commission ("FCC"), codified at 47 C.F.R. § 64.1200, *et seq*.

2. Through its enactment of the TCPA, Congress sought to protect consumers from intrusive and unwanted robocalls and text messages that invade privacy and disrupt daily life. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (noting TCPA's aim to curb "abusive telemarketing practices").

3. As alleged herein, Defendant engaged in a pattern of unlawful telemarketing by targeting Plaintiffs and the proposed Class ("Class," defined below) with unsolicited calls, causing widespread annoyance and harm, in violation of the TCPA including by using an artificial or prerecorded voice without prior express written consent in violation of 47 U.S.C. § 227(b)(1)(A).

4. Through this action, Plaintiffs seek an award of actual and statutory damages to Plaintiffs and the Class to compensate for the injuries inflicted by Defendant's misconduct, and injunctive relief to halt ongoing and future unlawful telemarketing practices in violation of the TCPA.

## JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction**. This Court has federal question subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

6. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because Defendant is a legal entity formed under the laws of this state and maintains its principal place of business in Boston County, Massachusetts.

7. **Venue**. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and Defendant is subject to personal jurisdiction in this district,.

## PARTIES

8. Plaintiff Summerset is a natural person and, at all relevant times, was a resident of Bleckley County, Georgia.

9. Plaintiff Taylor is a natural person and, at all relevant times, was a resident of Georgia.

10.     Defendant is a legal entity organized under the laws of Massachusetts with its principal place of business in Boston County, Massachusetts.

## TCPA BACKGROUND

11.     In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, to curb the explosive growth of abusive telemarketing practices that invade consumer privacy and disrupt daily life. Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5) (1991). The TCPA targets unwanted calls and text messages, such as those alleged herein, to protect consumers from unsolicited intrusions. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (noting TCPA's response to "voluminous consumer complaints about abuses of telephone technology").

12.     The TCPA prohibits initiating any call, other than for emergency purposes or with prior express consent, using an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). An ATDS is defined as equipment with the capacity to store or produce numbers using a random or sequential number generator and dial them. 47 U.S.C. § 227(a)(1); *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021). The TCPA also restricts telemarketing calls to residential subscribers before 8 a.m. or after 9 p.m., local time, and to residential subscribers whose phone numbers are registered on the National DNC, without prior express invitation or permission, and makes such claims actionable after more than one call in a 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA further mandates that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop. 47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5). Cellular numbers

registered on the DNC are presumed residential. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14039 (2003).

13. Telemarketing calls require prior express written consent, defined as "an agreement, in writing, that bears the signature of the person called or texted that clearly and conspicuously authorizes no more than one identified seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice." 47 C.F.R. § 64.1200(f)(9). A called party may revoke prior express consent to receive calls or text messages by using "any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10).

14. An entity can be vicariously liable under the TCPA for a call made on its behalf. Under those circumstances, the entity is deemed to have initiated the call through the person or entity. In a 2008 Declaratory Ruling, the FCC stated that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) ("The 2008 FCC Ruling thus has the force of law[.]").

15. The FCC has also made clear that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72,

30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*. Thus, any second call placed to a wrong number violates the TCPA.

16. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3), (c)(5). Defendant's alleged calls to Plaintiff and the Class, without consent and in violation of DNC and internal do-not-call rules, fall squarely within the TCPA's prohibitions, warranting these remedies to redress the harm inflicted.

## FACTUAL ALLEGATIONS

17. At all relevant times Plaintiff Summerset was the subscriber and primary user of a cellular telephone number ending in 7486.

18. This is Plaintiff Summerset's personal phone line that is used as Plaintiff's residential phone and is the primary means for friends and family to reach Plaintiff at home.

19. Plaintiff Summerset never gave prior express written consent, or prior express permission or invitation to receive calls from Defendant.

20. Plaintiff Summerset did not transact business with Defendant within 18-months of receiving Defendant's calls.

21. Plaintiff Summerset did not make an inquiry regarding Defendant's products or services within three-months of receiving Defendant's calls.

22. Defendant initiated or caused to be initiated numerous unlawful calls to Plaintiff Summerset's telephone number in violation of the TCPA.

23. Below are non-exhaustive examples of some of the unlawful calls that Defendant initiated to Plaintiff Summerset, and upon information and belief, Plaintiff Summerset alleges that

discovery will identify additional unlawful communications to Plaintiff's phone that were initiated by Defendant or on its behalf within the last four years.

- On April 13, 2025, at 10:58 a.m. from 864-690-0097; and
- On April 14, 2025, at 12:21 p.m. from 208-998-7346.

24. Voicemails left by these calls stated that the call was made on behalf of Defendant:

> Hi, it's Liberty Mutual auto insurance quote. If you're ready to discuss your quote call us back at this number if you'd like to opt out from receiving these calls please let us know by calling 888-475-4204.

25. The purpose of each solicitation was to promote or encourage the purchase of Defendant's goods or services.

26. When listening to the call, Plaintiff easily determined that the voice was prerecorded because: (1) there was a delay before the prerecorded voice started; (2) the voice was robotic and monotone; (3) the message was the same or substantially the same each time; and (4) the message was impersonal and did not identify Plaintiff or any specific recipient. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171 at 10-11 (N.D. Ga. June 23, 2016) ("When one receives a call it is a clear-cut fact easily discernible to any lay person whether or not the recipient is speaking to a live human being or is instead being subjected to a prerecorded message."). Plaintiff is able to provide the Court with audio files of Defendant's voicemails to demonstrate they are prerecorded.

27. At all relevant times Plaintiff Taylor was the subscriber and primary user of a cellular telephone number ending in 2486.

28. Plaintiff Taylor never gave prior express written consent, or prior express permission or invitation to receive calls from Defendant.

29. Plaintiff Taylor did not transact business with Defendant within 18-months of receiving Defendant's calls.

30. Plaintiff Taylor did not make an inquiry regarding Defendant's products or services within three-months of receiving Defendant's calls.

31. Defendant initiated or caused to be initiated numerous unlawful calls to Plaintiff Taylor's telephone number in violation of the TCPA.

32. Below are non-exhaustive examples of some of the unlawful calls that Defendant initiated to Plaintiff Taylor, and upon information and belief, Plaintiff Taylor alleges that discovery will identify additional unlawful communications to Plaintiff's phone that were initiated by Defendant or on its behalf within the last four years: November 6, 7, 9, 10, 28, 2024. All of the calls came from (706) 493-2486.

33. Voicemails left by these calls stated that the call was made on behalf of Defendant:

> Hi, it's Liberty Mutual with your auto insurance quote. If you're ready to discuss your quote, call us back at this number if you'd like to opt out from receiving these calls please let us know by calling 888-475-4204.

34. The purpose of each solicitation was to promote or encourage the purchase of Defendant's goods or services.

35. When listening to the call, Plaintiff easily determined that the voice was prerecorded because: (1) there was a delay before the prerecorded voice started; (2) the voice was robotic and monotone; (3) the message was the same or substantially the same each time; and (4) the message was impersonal and did not identify Plaintiff or any specific recipient. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171 at 10-11 (N.D. Ga. June 23, 2016) ("When one receives a call it is a clear-cut fact easily discernible to any lay person whether or not the recipient is speaking to a live human being or is instead being subjected to a

7

prerecorded message."). Plaintiff is able to provide the Court with audio files of Defendant's voicemails to demonstrate they are prerecorded.

36. Defendant's unlawful calls caused Plaintiffs and the Class members caused concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, violation of their statutory privacy rights, and disruption to their personal and daily life as Plaintiffs received the unlawful calls at inconvenient times, causing Plaintiffs to stop to check Plaintiffs' phone and waste time answering the calls to confirm they were not for an emergency purpose, and because Plaintiffs were forced to spend time investigating the source of the calls and seeking out legal counsel to stop Defendant's harassing solicitations.

37. Based upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all telephone solicitations advertising or promoting its goods and services, which show the dates, times, target telephone numbers, and content of each telephone solicitation made to Plaintiffs and the Class members.

## CLASS ALLEGATIONS

38. Plaintiffs bring this action individually and as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed Class:

> **TCPA Prerecorded Voice Class**: All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received a telephone call (2) on their cellular phone (3) from Defendant or on its behalf (4) that used an artificial or prerecorded voice, (5) and from whom Defendant does not possess evidence of prior express written consent to such calls.

39. Plaintiffs reserve the right to expand or narrow the Class definition following discovery.

8

40. Excluded from the Class are Defendant and its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

41. *Numerosity*. The members of the Class are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown, Plaintiffs allege upon information and belief that each Class includes at least 40 members based on the nature and objective of telemarketing campaigns, which are designed to reach a large volume of potential customers (called "leads" in the industry), in order to convert a small percentage of those leads into actual customers to ultimately drive increased sales to the company that engage in telemarketing. Class members are ascertainable through objective criteria, such as Defendant's call and text records, which Defendant maintains, allowing identification through discovery.

42. *Common questions of law and fact predominate.* There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

    a. Whether Defendant used an artificial or prerecorded voice to make the calls at issue;

    b. Whether Defendant's conduct was knowing and/or willful;

    c. Whether Plaintiffs and the Class are entitled to statutory damages and the amount of such damages; and

    d. Whether Defendant should be enjoined from further violations of law as alleged herein.

43. *Typicality*. Plaintiffs' claims are typical of the Class members' claims under Fed. R. Civ. P. 23(a)(3) because they arise from the same course of conduct by Defendant and are based

on the same legal theories. Plaintiffs and Class members suffered similar harms, and Plaintiffs are not subject to unique defenses.

44. ***Adequacy of representation***. Plaintiffs will fairly and adequately protect the Class's interests under Fed. R. Civ. P. 23(a)(4). Plaintiffs have retained counsel experienced in complex consumer class actions and TCPA litigation and intend to vigorously prosecute this action. Plaintiffs have no interests antagonistic to the Class.

45. ***Superiority***. A class action is superior to other methods for fairly and efficiently adjudicating this controversy under Fed. R. Civ. P. 23(b)(3). Individual litigation is economically infeasible due to the high costs relative to individual, making separate lawsuits impractical. Class treatment avoids burdening the court system with numerous individual cases and prevents inconsistent rulings or standards for Defendant. For example, one court might enjoin Defendant's conduct while another might not, creating conflicting obligations. Class members are unlikely to pursue individual claims due to the modest damages relative to litigation costs.

46. In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

   a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

   b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

 c. Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

 d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### COUNT 1

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiffs and the TCPA Prerecorded Voice Class)**

47. Plaintiffs incorporate by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Count, as though fully set forth herein.

48. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using…an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

49. As alleged herein, Defendant—or third-parties acting on Defendant's behalf—initiated telephone calls to the cellular telephone numbers of Plaintiff and the Class using an artificial or prerecorded voice.

50. Defendant did not have prior express written consent to place make such calls to Plaintiffs and the Class.

51. Defendant, therefore, violated Section 227(b)(1)(A)(iii).

52. As a result of Defendant's violations of the TCPA, Plaintiffs and the Class members were harmed.

53. Plaintiffs and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

54. Plaintiffs and the Class members are also entitled to an award of statutory damages of $500.00 for each call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

55. Because Defendant knew or should have known that it was placing calls using an artificial or prerecorded voice without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

56. Under the TCPA, Plaintiffs and the Class are entitled to an award of treble statutory damages of $1,500.00 for each call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, prays for the following relief:

A. An order certifying the Class, appointing Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel;

B. An award to Plaintiffs and each Class member of actual damages;

C. An award to Plaintiffs and each Class member of statutory damages of $500 per violation of the TCPA, trebled to $1,500 for knowing or willful violations;

D. An injunction prohibiting Defendant from further violations of the TCPA;

E. An award to Plaintiffs and the Class of their reasonable attorney's fees as available under the law;

F.      An award to Plaintiffs and the Class of their costs of this action as available under the law;

G.      An award to Plaintiffs and the Class of post-judgment interest as available under the law;

H.      Any such further and other relief as the Court deems just and equitable.

Dated: November 11, 2025

/s/ *Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Christopher Gold, Esq. (*admitted pro hac vice*)
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*