## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN SUMMERSET and SARA TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:25-cv-11121-PBS<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S
## MOTION TO DISMISS OR STRIKE THE CLASS ALLEGATIONS

**Introduction**

Liberty Mutual's motion should be denied because it asks the Court to short-circuit this case on technicalities and on premature Rule 23 issues that are not properly resolved on a motion to dismiss or a motion to strike. The Amended Complaint alleges that Liberty Mutual placed multiple prerecorded telemarketing calls to Plaintiffs' cellular telephones without the required consent and left Liberty Mutual–branded voicemail messages, causing the kinds of privacy, nuisance, and time harms the TCPA was designed to prevent. *See* ECF No. 34, ¶¶ 23–36, 47–56.

Despite the fact that Liberty Mutual already answered the originally filed Complaint, it now moves to dismiss the substantially identical claims of Plaintiff Taylor from the Amended Complaint for the simple reason that it contains an inadvertent transposition error in the last four digits of Plaintiff's phone number, which Liberty Mutual itself characterizes as an "apparent error." ECF No. 38 at 1–2. Liberty Mutual's argument elevates form over substance. A specific telephone number is not a pleading element under the TCPA, nor does a scrivener's error extinguish Article III standing. This is, at best, a minor discrepancy to be clarified in discovery, not a fatal defect requiring the drastic remedy of dismissal.

Liberty Mutual's request to strike class allegations is even more overreaching. Liberty Mutual already chose to litigate the merits by filing an Answer to Plaintiff's initial complaint (ECF No. 9), which pled the same prerecorded-voice TCPA class definition Liberty Mutual now seeks to strike. Having answered that identical class definition, Liberty Mutual cannot credibly claim it is "obvious from the pleadings" that the case "cannot possibly move forward on a classwide basis"—particularly before class discovery and before the Court addresses certification in the ordinary course. *See* ECF No. 38 at 5 (quoting standard).

## Background

Plaintiffs allege Liberty Mutual engaged in telemarketing practices that violated the TCPA by placing calls to cellular telephones using an artificial or prerecorded voice without the required consent. ECF No. 34, ¶¶ 1–3, 47–56. Plaintiff Summerset alleges she received prerecorded Liberty Mutual marketing calls and voicemail messages, describing the nature of the calls and the communications she received. *Id.*, ¶¶ 23–26. Plaintiff Taylor alleges that she received multiple calls in November 2024; and that she received Liberty Mutual–related prerecorded voicemail messages offering an auto insurance quote and providing an opt-out number. *Id.*, ¶¶ 27–35. Plaintiffs further allege concrete harms resulting from these calls, including invasion of privacy, nuisance and aggravation, wasted time, and disruption to daily activities. *Id.*, ¶ 36. Notably, for both Plaintiffs, the Amended Complaint alleges that the prerecorded voicemail message was "the same or substantially the same each time," and it pleads substantially identical Liberty Mutual voicemail scripts for both Plaintiffs—each referencing a Liberty Mutual auto insurance quote, inviting a call back "at this number," and providing the same opt-out number (888-475-4204). *Id.*, ¶¶ 25–26 (Summerset voicemail script), ¶¶ 33–35 (Taylor voicemail script), and ¶ 29 (alleging the message was the same or substantially the same each time).

Plaintiffs propose a "TCPA Prerecorded Voice Class" defined by objective criteria focused on the receipt of prerecorded calls to cellular phones from Liberty Mutual or on its behalf during the relevant limitations period and tied to Liberty Mutual's consent evidence. *Id.*, ¶ 38. The class definition proposed is below:

> **TCPA Prerecorded Voice Class**: All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received a telephone call (2) on their cellular phone (3) from Defendant or on its behalf (4) that used an artificial or prerecorded voice, (5) and

      from whom Defendant does not possess evidence of prior express written consent to such calls.

*Id*.

## Argument

I. **The Motion to Dismiss Should be Denied because Plaintiff Taylor Plausibly Alleges Article III Standing and a TCPA claim.**

Liberty Mutual's attack on Plaintiff Taylor fails because the Amended Complaint plausibly alleges the elements required to plead a prerecorded-voice TCPA claim and for Article III standing, and Liberty Mutual's motion improperly demands pleading specificity the law does not require. Taylor alleges she is the subscriber and primary user of a cellular telephone number, that she received multiple calls in November 2024, and that those calls resulted in Liberty Mutual–related prerecorded voicemail messages offering an auto insurance quote and providing an opt-out number. ECF No. 34 ¶¶ 27–35. She further alleges concrete harms including invasion of privacy, nuisance and aggravation, wasted time, and disruption to daily activities. *Id.*, ¶ 36. Those allegations, accepted as true and construed in Plaintiffs' favor, plausibly establish injury-in-fact, traceability to Liberty Mutual, and redressability through TCPA statutory damages and injunctive relief. *Id.*, ¶¶ 33–36, 47–56.

Liberty Mutual's own brief supplies the governing elements and undermines its argument. Liberty Mutual quotes that "the elements of a TCPA claim [based on the use of an artificial or prerecorded voice] are: (1) the defendant used…an artificial or prerecorded voice, (2) to call a telephone number assigned to a cellular telephone service" to which "the plaintiff's telephone number is assigned" or "to a service for which the called party is charged for the call." *Breda v. Cellco P'ship*, 934 F.3d 1, 4 (1st Cir. 2019); ECF No. 38 at 3–4. Nothing in that articulation—nor in Liberty Mutual's own presentation of it—adds a separate element requiring

a plaintiff to plead the full telephone number with documentary precision as a prerequisite to stating a claim. ECF No. 38 at 3–4. The relevant pleading inquiry is whether the complaint plausibly alleges that Liberty Mutual used an artificial or prerecorded voice to call a number assigned to a cellular service to which Taylor's number is assigned (or a service where the called party is charged). *Breda*, 934 F.3d at 4; ECF No. 38 at 3–4. The Amended Complaint does exactly that by alleging Taylor's number is a cellular number, that it was called repeatedly, and that the calls delivered Liberty Mutual prerecorded marketing voicemails. ECF No. 34 ¶¶ 27–35.

Indeed, case law in TCPA cases around the country is in accord. *See e.g. Thomas v. Peterson's Harley Davidson of Miami, L.L.C.*, 363 F. Supp. 3d 1368, 1371–72 (S.D. Fla. 2018) ("[A]t the pleading stage, the TCPA does not require Plaintiff to 'allege his specific cellular telephone number.'") (quoting *Manfred v. Bennett Law, PLLC*, Civ. No. 18-61723, 2012 U.S. Dist. LEXIS 173935, 2012 WL 6102071, at *2 n.2 (S.D. Fla. Dec. 7, 2012)); *Stewart v. T-Mobile USA, Inc.*, 124 F. Supp. 3d 729, 732–33 (D.S.C. 2015) ("Consistent with other decisions in this District, the Court will not require Plaintiff to plead the specific cellular telephone number that [Defendant] purportedly called in order to state a plausible TCPA claim."); *Weaver v. Wells Fargo Bank N.A.*, Civ. No. 15-1247, 2015 U.S. Dist. LEXIS 104520, 2015 WL 4730572, at *2 (M.D. Fla. Aug. 10, 2015) (concluding plaintiff's telephone number is not required to state a TCPA claim); *Ott v. Mortgage Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1059–60 (D. Or. 2014) ("*Strand* is contrary to most other district courts, including many in the Ninth Circuit, that do not require such detail[, including the plaintiff's telephone number,] at the pleading stage in order to provide adequate notice to a TCPA defendant."); *Crawford v. Target Corp.*, Civ. No. 14-0090, 2014 U.S. Dist. LEXIS 159203, 2014 WL 5847490, at **3–4 (N.D. Tex. Nov. 10,

2014) ("[A] plaintiff's specific telephone number is not essential to providing a defendant notice of the conduct charged.").

Liberty Mutual's effort to dismiss Taylor on the theory that it cannot "identify" her number is irreconcilable with its posture toward Summerset. The Amended Complaint pleads that both Plaintiffs received prerecorded telemarketing calls to a cellular telephone and that the voicemail message was "the same or substantially the same each time," with substantially identical Liberty Mutual scripting for each Plaintiff (including the same opt-out number). ECF No. 34 ¶ 29, ¶¶ 25–26, ¶¶ 33–35. If Liberty Mutual was sufficiently prepared to respond on the merits to Summerset—and in fact previously filed an Answer rather than claiming it could not investigate because a number was not pleaded to its satisfaction—then it cannot plausibly claim it is incapable of doing the same for Taylor when Taylor alleges the same kind of calls, to the same kind of device (a cellphone), with the same prerecorded Liberty Mutual message. ECF No. 34 ¶¶ 23–26, 27–35; ECF No. 38 at 1–2. The inconsistency is even starker because Summerset's number is redacted in the public pleading, yet Liberty Mutual did not contend that a fully stated number is a pleading element or a prerequisite to answering. ECF No. 34 ¶¶ 23–26. Liberty Mutual's selective "we can't verify" argument as to Taylor is therefore not a genuine pleading deficiency; it is a tactical attempt to pick off one named plaintiff despite materially parallel allegations. ECF No. 34 ¶¶ 27–35; ECF No. 38 at 1–4.

Finally, Liberty Mutual's "no record" assertions are not a pleading-stage trump card. The Amended Complaint alleges the calls were made by Liberty Mutual "or on its behalf," and it attributes to the prerecorded marketing voicemail content and opt-out information. ECF No. 34 ¶¶ 33–35, 38. Whether Liberty Mutual's internal records currently reflect the calls, whether vendor systems reflect them, and whether Liberty Mutual's counsel has already used Taylor's

6

identifying information in vendor investigations are fact questions that cannot be resolved against Plaintiffs on a Rule 12 motion. ECF No. 34 ¶¶ 33–38; ECF No. 38 at 1–2. Because Taylor plausibly alleges a prerecorded-voice call to a cellular number assigned to her and concrete harms flowing from that call, the motion to dismiss Taylor should be denied. ECF No. 34 ¶¶ 27–36, 47–56; ECF No. 38 at 3–4.

> **II.      The Court Should Deny the Request to Strike Class Allegations Because Rule 12(f) Striking is Disfavored, and Class Certification Questions Should be Addressed on a Developed Record.**

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. FED. R. CIV. P. 12(f), (f)(2). However, the Rule 12(f) device is used rarely and is particularly disfavored, applying, by its very definition, to "redundant, immaterial, impertinent, or scandalous matter." Courts disfavor motions to strike because they "propose[ ] a drastic remedy." *Wrench LLC v. Taco Bell Corp.*, 36 F.Supp.2d 787, 789 (W.D. Mich. 1998), quoting, *Resolution Trust Corp. v. Vanderweele*, 833 F.Supp. 1383, 1387 (N.D. Ind. 1993). In addition, such motions "are generally regarded with disfavor because of the limited importance on pleading in federal practice, and because they are often used as a delaying tactic." *United States v. Quadrini*, 2007 U.S. Dist. LEXIS 89722, 2007 WL 4303213, *3 (E.D. Mich. 2007), (quoting *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2003)).

Indeed, counsel for the Plaintiff has identified only a handful of cases addressing the Rule 12(f) device in the context of striking class allegations in this district and Circuit. The standard adopted in these cases is, as Defendant concedes, akin to that under Rule 12(b)(6), permitting

7

striking class allegations only in cases where court is convinced that "any questions of law are clear and not in dispute" and that "no set of circumstances" put forth at the pleadings stage would permit a class to be certified on the basis set forth in the complaint. *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 575–76 (M.D. Tenn. 2020) (collecting cases).

In other words, Defendant's "arguments are better addressed on a motion for class certification with a more complete record." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*, 520 F. Supp. 3d 1258, 1274 (C.D. Cal. 2021); *see also Moser v. Health Ins. Innovations, Inc.*, No. WL 325112, at *11 (S.D. Cal. 2018) ("The Court concludes that Defendant's motion to strike class allegations is premature at this stage of the proceedings. The class issues raised by Nationwide and HII are more appropriately considered at the class certification proceedings."); *Sos v. State Farm Mut. Auto. Ins. Co.*, No: 6:17-cv-890-Orl- 40KRS, 2018 U.S. Dist. LEXIS 67501 (M.D. Fla. Mar. 12, 2018) (declining to engage in such an analysis "at this stage of the litigation" and instead providing the parties the opportunity to address the issues raised by the defendant "in briefing class certification"); *Sullivan v. Gov't Emples. Ins. Co.*, 2018 U.S. Dist. LEXIS 219631, at *26 (M.D. Fla. Apr. 6, 2018) (explaining that "the shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form.").

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly' and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694-MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018); *see also Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, at *707 (11th Cir. 1998) (A consumer protection statute is remedial in nature and therefore must be construed liberally); *Legg v. Voice Media Grp., Inc.*, 990

F.Supp 2d 1351, 1354 (S.D. Fla. Jan. 3, 2014) (the TCPA is a consumer protection statute, and because it "is remedial in nature, it should be construed liberally in favor of consumers."); *Brown v. Credit Management, LP*, 131 F.Supp3d 1332, 1345-46 (N.D. Ga. 2015). A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015). Contrary to what Defendant argues, to determine class membership in this case, the Court will ask the following series of objective, factual questions:

- Did Defendant place pre-recorded calls?

Were those numbers assigned to a cellular telephone service?

- Does Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call the Plaintiffs?

*See id*. at *8-9 (finding that the plaintiff's proposed class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

The Defendant's assertion of consent in the class definition does not make the class failsafe because it will be the classwide data revealed in discovery that will provide the appropriate contours of the class definition. Indeed, as the Fourt Circuit Court of Appeals explained in *Krakauer*:

> [T]he class certified by the district court easily meets the demands of Rule 23. First, the class members are ascertainable. As we previously explained, class litigation should not move forward when a court cannot identify class members without "extensive and individualized fact-finding or 'mini-trials.'" *EQT Prod. Co.*, 764 F.3d at 358. The goal is not to "identify every class member at the time of certification," *id.*, but to define a class in such a way as to ensure that there will be some "administratively feasible [way] for the court to determine whether a

> particular individual is a member" at some point. *Id.* (quoting 7A Charles Alan Wright et al., Federal Practice and Procedure, § 1760 (3d ed. 2005)).
>
> The class-wide data obviated any concern on this score. The records in this case clearly showed when calls were placed and whether the call went through. The court was presented with data showing whether a number was residential and connecting the number to particular names and addresses. The class members could therefore be identified on a large-scale basis, and notified of the class action accordingly.

*Krakauer*, 925 F.3d at 658. In discovery, the Plaintiff will seek the same "class wide data" referenced in *Krakauer* to identify putative class members.

In fact, when the Defendant has not met its burden of demonstrating consent applicable to the class, a class is properly *certified*, not stricken. *See, e.g*, Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *5 (S.D.N.Y. Sept. 29, 2022). Defendant's argument focuses on a potential affirmative defense of consent or an established business relationship (of which it produced no evidence to support) to assert that this action in its entirety is incapable of being maintained as a class action. In rejecting the same argument raised in another TCPA case, another court held *in this district* held exactly this:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Liberty Mutual's request to strike class allegations remains premature for the reasons already stated and is further undermined by Liberty Mutual's attempt to weaponize a purported pleading-detail issue about one plaintiff into a classwide defect. Plaintiffs allege a prerecorded-voice telemarketing campaign attributable to Liberty Mutual and seek to define a class around objective calling events and Liberty Mutual's evidence of consent. ECF No. 34 ¶ 38. Whether

Liberty Mutual used vendors, whether the voicemail scripts were standardized, how consent was captured and stored, and how class membership can be determined from dialing and consent records are discovery-driven questions that the Court should address at certification on an evidentiary record—not at the pleadings stage through a motion to strike. ECF No. 34 ¶¶ 33–38; ECF No. 38 at 5–7.

Further, Rule 12(f) provides that the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. There is nothing redundant, immaterial, impertinent, or scandalous about Plaintiffs' proposed class definition. Plaintiffs' class allegations are best tested under Rule 23 on a motion for class certification after the collection and presentation of evidence. *See McCabe v. Daimler AG*, No. 1:12-cv-2494-TCB, 2013 WL 6283657, at *1 (N.D. Ga. Dec. 2, 2013) ("[T]his motion [to strike class allegations] is premature and the Court will wait until a motion for class certification is filed to determine whether this case can proceed as a class action . . . . The shape and form of a class action evolves only through the process of discovery, and it is premature to rule on class certification before the claim has taken form.") (internal punctuation omitted). Thus, Defendant's Motion to strike should be denied for at least two reasons: (1) because Plaintiffs' proposed class definition is not a fail-safe class; and (2) because it is inappropriate to make a determination regarding class certification at the pleading stage.

Finally, the Court should remain especially skeptical of Liberty Mutual's Rule 12(f) request because Liberty Mutual already filed an Answer in this case, while Plaintiff Summerset was proceeding on the same prerecorded-voice class definition Liberty Mutual now attacks. ECF No. 38 at 1–2. That procedural choice is inconsistent with the claim that the class allegations are

11

so facially defective that they should be erased immediately, and it reinforces the appropriate path: allow discovery and resolve class issues in the ordinary Rule 23 process.

### III. If the Court grants any part of Defendant's Motion, it should grant Plaintiff leave to amend.

Under Fed. R. Civ. P 15(A)(2) "a party may amend its pleading only with…the court's leave." "It is well established that amendments to pleadings should be freely allowed when the interests of justice so require." *United States v. United States Tr. Co.*, 106 F.R.D. 474, 476 (D. Mass. 1985) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 28 L. Ed. 2d 77, 91 S. Ct. 795 (1971); *Foman v. Davis*, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); *Farrell v. Hollingsworth*, 43 F.R.D. 362 (D.S.C. 1968)); *see also* Fed. R. Civ. P 15(A)(2) ("The court should freely give leave when justice so requires."). As the Supreme Court has stated, "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182.

### Conclusion

The Court should deny Liberty Mutual's motion. Plaintiff Taylor alleges the elements identified in *Breda* as Liberty Mutual itself quotes them—use of an artificial or prerecorded voice to call a number assigned to a cellular telephone service to which Taylor's telephone number is assigned—and alleges concrete injury from receiving those calls. ECF No. 34 ¶¶ 27–36; ECF No. 38 at 3–4. Neither *Breda* nor Liberty Mutual's own articulation of the elements imposes a separate requirement that the full number be pleaded as an element at the motion-to-

dismiss stage, particularly where the number can be confirmed in discovery and, as Plaintiffs understand, is already known to Liberty Mutual and its vendor through their investigation.

Liberty Mutual's request to strike the class allegations should likewise be denied. Rule 12(f) striking is a drastic, disfavored remedy, and Liberty Mutual has not shown it is "obvious from the pleadings" that the proposed class cannot be maintained. To the contrary, Plaintiffs allege a uniform prerecorded-voice telemarketing campaign, that the voicemail message was "the same or substantially the same each time," and they propose an objective class definition tied to Liberty Mutual's own dialing and consent records—precisely the kind of evidence that should be tested in discovery and addressed through the normal Rule 23 process. Liberty Mutual's motion is also procedurally inequitable because Liberty Mutual already filed an Answer to the same prerecorded-voice class definition it now seeks to strike, confirming these issues are not facially incapable of class treatment and should be resolved, if at all, at class certification on a developed record.

Dated: December 22, 2025

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Christopher Gold, Esq. (*admitted pro hac vice*)
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*